IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|   |   |
|---|---|
| | : |
| LINDSLEY WILLIAMS | |
| | : |
| | |
| v. | : Civil Action No. DKC 19-1358 |
| | |
| | : |
| SELENE FINANCE, LP, et al. | |
| | : |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this mortgage dispute are cross-motions for summary judgment filed by Plaintiff Lindsley Williams ("Plaintiff") (ECF No. 82) and Defendants Selene Finance, LP ("Selene"); Anthium, LLC ("Anthium"); Atlantica, LLC ("Atlantica"); Franklin Credit Management Corporation ("Franklin") and Bayview Loan Servicing, LLC ("Bayview") (collectively "Defendants"). (ECF No. 85). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the reasons that follow, the court will issue declarations addressing Count I of the complaint, the counterclaim, and the third party claim against Ms. Dodd-Major and will grant Defendants' cross-motion for summary judgment on the other counts. The third-party claims against Franklin will be dismissed as moot.

I.   **Factual Background**

In May 1989, Plaintiff purchased a second home in Deer Park, Maryland ("the Property") with a thirty-year mortgage loan obtained from Developers Mortgage Corporation in the original principal amount of $213,750.00.  The terms and conditions of the loan were governed by a promissory note dated May 26, 1989 (the "Note").  (ECF No. 85-1).  The Note had a maturity date of June 1, 2019.  The interest rate on the Note was an adjustable interest rate tied to an index based on the weekly average yield on United States Treasury Securities.  The Note was secured by a deed of trust (the "Deed" or "Deed of Trust") also dated May 26, 1989 and recorded in the land records for Garrett County, Maryland.  (ECF No. 85-2).  Franklin served as the initial loan servicer and on July 9, 1996, also became the holder of the note.

A.   **1996 Loan modification agreement**

In October 1996,[1] Plaintiff and Franklin, at Plaintiff's request, entered into a loan modification agreement adjusting the maturity date, interest rate, and the payment amounts due under the Note.  (ECF No. 85-3, at 15-18).  The modified maturity date of the Note was October 1, 2002 with a balloon payment due on this date.  (*Id.*, at 15).  The agreement further provided that Plaintiff

---

[1]  The parties agreed that as of October 15, 1996 the total unpaid balance on the loan was $208,920.00 consisting of: $198,777.86 in unpaid principal, $9,716.87 in accrued interest, and $470.83 in late fees.

would pay interest at a rate of 1.00% from November 1, 1996 to April 1, 1997; 9.00% from May 1, 1997 to October 1, 1997; and 10% from November 1, 1997 until maturity. (*Id.*, at 15).

### B.   November 2000 Default

Following execution of the loan modification agreement, Plaintiff fell behind on his mortgage payments. In November 2000, Franklin commenced a foreclosure action against him in the Circuit Court for Garrett County, Maryland. On December 1, 2000, Plaintiff paid a lump sum of $24,140.23 to bring the loan current and avoid foreclosure. (ECF No. 85-3, at 125). Following the lump sum payment, Plaintiff continued to be late on or miss payments altogether, resulting in additional notices of default.

### C.   October 2002 Loan Maturity–Present

In October 2002 Franklin notified Plaintiff that the loan had matured and that the full balloon payment was due. Mr. Williams did not make full payment, but rather, continued to make only incremental payments. Although the loan was in default, Franklin continued accepting incremental payments and continued charging Plaintiff interest at the fixed ten percent rate in effect at the time the loan matured. Approximately twelve years later, on March 31, 2014, Franklin transferred servicing of the loan to Bayview. Bayview also became the note holder at this time.

On May 14, 2015, Bayview commenced a foreclosure proceeding against Mr. Williams in the Circuit Court for Garrett County.

Ultimately, however, Bayview discontinued prosecution of the foreclosure action and attempted to work with Plaintiff to make payments although the loan remained in default. In September 2016 Bayview transferred the loan to U.S. Bank National Association ("U.S. Bank") but continued to service it. In November 2016, U.S. Bank commenced a third foreclosure proceeding against Plaintiff. On May 15, 2017, Mr. Williams paid another lump-sum payment of $112,554.81 to prevent a foreclosure sale of the Property. On July 16, 2018, Bayview transferred the Note and the Deed to Atlantica. On August 22, 2018, Selene took over as the loan servicer.

On December 7, 2018, Selene sent Plaintiff a notice of its intent to foreclose on the Property although neither party asserts that a foreclose action has actually been filed nor is there any foreclosure action currently pending according to the court's search of public records. In addition, no party asserts that Anthium or any other Defendant has filed suit against Plaintiff to recover damages under the Note. In 2018, Plaintiff and his wife, Ms. Linda Dodd-Major, began using the Property as their primary residence. On December 18, 2018, Plaintiff executed a deed without any stated consideration purporting to convey the Property from only himself to himself and Ms. Dodd-Major as tenants by the entirety. (ECF No. 58-5). On February 4, 2019, Atlantica

transferred the Note and Deed to Anthium.  (ECF No. 85-3, at ¶ 4).[2]
Each of the entities that serviced the loan from October 1, 2002
onward provided Plaintiff with monthly mortgage statements
reflecting a fixed, ten percent interest rate.  Plaintiff never
disputed that this was the proper interest rate until this
litigation began, approximately fifteen years later.

## II.  Procedural Background

On January 2, 2019, Plaintiff filed suit against Selene, the
current loan servicer, in the Circuit Court for Garrett County.
On April 17, 2019, he filed a first amended complaint adding
Anthium, Atlantica, Franklin and Bayview as Defendants.  (ECF No.
13).  In his first amended complaint, Plaintiff seeks declaratory
relief under Md. Cts. & Jud. Pro. § 3-406 (Count I); asserts common
law claims for unjust enrichment (Count II) and negligent
misrepresentation (Count III); and asserts statutory violations of
the Fair Debt Collection Practices Act ("FDCPA") (Count IV); the
Maryland Consumer Debt Collection Act ("MCDCA") (Count V); and the
Maryland Consumer Protection Act ("MCPA") (Count VI).  On May 8,
2019, Defendants removed the case to federal court on the bases of
diversity and federal question jurisdiction.  On April 3, 2020,
Anthium filed a counterclaim against Plaintiff and a third-party

---

[2] At the time this litigation was filed, Selene was the loan
servicer and by the time the Amended Complaint was filed, Anthium
was the noteholder.

complaint against Ms. Dodd-Major seeking a declaration as to the outstanding amount owed under the Note and a declaration that the Deed of Trust remains a valid and enforceable instrument. (ECF Nos. 57 & 58). Third party claims for indemnification and contribution were filed against Franklin by Atlantica, Anthium, and Selene (ECF No. 34) and Bayview (ECF No. 52).

On December 10, 2020, Plaintiff filed a motion for partial summary judgement asking the court to declare (1) that the lien of the Deed of Trust has expired by operation of law thus, rendering it unenforceable and (2) that the statute of limitations bars Anthium from bringing any suit for recovery of damages under the terms of the Note.[3] (ECF No. 82, at 2). Defendants responded and filed a cross-motion for summary judgment as to *all* claims asserted in Plaintiff's first amended complaint, and as to Anthium's counterclaim against Plaintiff and its third-party claim against Ms. Dodd-Major. (ECF No. 84). Because the third party claims against Bayview depend on resolution of Plaintiff's claims, they were stayed. (ECF Nos. 80 and 81.)

## III. Standard of Review

A motion for summary judgment will be granted only if there exists no genuine dispute as to any material fact and the moving

---

[3] Although not expressly stated, Plaintiff's motion for partial summary judgment plainly seeks judgment only as to Count I of the amended complaint because this is the only count requesting declaratory relief.

party is entitled to judgment as a matter of law.   Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008).   Summary judgment is inappropriate if any material factual issue "may reasonably be resolved in favor of either party."   *Liberty Lobby*, 477 U.S. at 250; *JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

The moving party bears the burden of showing that there is no genuine dispute as to any material fact.   However, no genuine dispute of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof.   *Celotex*, 477 U.S. at 322-23.   Therefore, "[a] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [the] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'"   *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed.R.Civ.P. 56(e)).   "A mere scintilla of proof . . . will not suffice to prevent summary judgment."   *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003).   "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."   *Liberty Lobby*, 477 U.S. at 249-50 (citations omitted).   At the same time, the court

must construe the facts that are presented in the light most favorable to the party opposing the motion. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Emmett*, 532 F.3d at 297.

Ordinarily, "[w]hen cross-motions for summary judgment are before a court, the court examines each motion separately, employing the familiar standard under Rule 56 of the Federal Rules of Civil Procedure." *Desmond v. PNGI Charles Town Gaming, LLC*, 630 F.3d 351, 354 (4th Cir. 2011). The court must deny both motions if it finds there is a genuine dispute of material fact, "[b]ut if there is no genuine issue and one or the other party is entitled to prevail as a matter of law, the court will render judgment." 10A Charles A. Wright, et al., Federal Practice & Procedure § 2720 (3d ed. 1998). Here, however, the cross-motions concern a request for a declaratory judgment and, if a party is entitled to a declaration, the court must issue one regardless of which side prevails and even if it is adverse to the party requesting it. *See, Maryland Physician's Edge, LLC v. Behram*, DKC 17-2756, 2019 WL 4573417, at *9 (D.Md. Sept. 20, 2019).

**IV.  Analysis**

    **A.  Count I: Declaratory Relief**

In Count I of his amended complaint, Plaintiff seeks declarations that: (1) Anthium lacks the legal right to foreclose on the property because the lien of the Deed of Trust has expired and (2) the statute of limitations bars any suit for recovery of

damages under the terms of the Note; or, if not, that the proper interest rate on the Note for the period from October 1, 2002 onward is the adjustable rate contained in the original Note. Anthium's counterclaim and third-party claim against Ms. Dodd-Major seek a declaration that "the Note and Deed of Trust are valid and enforceable or, in the alternative, that Anthium shall have an equitable lien and constructive trust in equivalent value and in lieu thereof." (ECF Nos. 57 and 58, ¶ 46).  To the extent that these claims mirror the request in count one of Plaintiff's complaint, they are redundant and unnecessary.

As an initial matter, a removed state-court declaratory judgment action is treated as if Plaintiff had invoked the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.  *See Alban Waste, LLC v. CSX Transp., Inc.*, 9 F.Supp.3d 618, 620 (D.Md. 2014).  Both the Maryland Uniform Declaratory Judgments Act and the (Federal) Declaratory Judgment Act require a genuine, justiciable controversy for a declaratory judgment action to proceed.  *See Brooks v. Cousins,* 527 F.2d 472, 473 (1975) ("[T]he parties must have adverse interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." (quotation marks omitted)); *120 West Fayette Street, LLP v. Mayor & City Council of Baltimore City,* 413 Md. 309 (2010) (stating that declaratory judgment action requires a justiciable controversy wherein "there

are interested parties asserting adverse claims upon a [set] of

facts which must have accrued").

Plaintiff first requests a declaration that the Deed of Trust

has expired pursuant to Md. Real Property Code Ann. § 7-106(c)(1)

and thus, is no longer enforceable.  Section 7-106(c)(1) provides

that:

> (c)(1) If a mortgage or deed of trust remains
> unreleased of record, the mortgagor or grantor
> or any interested party is entitled to a
> presumption that it has been paid if:
> (i) 12 years have elapsed since the last
> payment date called for in the instrument or
> the maturity date as set forth in the
> instrument or any amendment or modification to
> the instrument and no continuation statement
> has been filed

Md. Real Property Code Ann. § 7-106(c)(1).  According to Plaintiff,

> Williams and Dodd-Major are entitled to an
> unrebuttable presumption that the Note has
> been paid off, if they can show that 12 years
> has elapsed since the maturity date in the
> Deed of Trust as amended by the Modification
> Agreement.  The Loan modification agreement is
> clear that it changed the maturity date from
> June 1, 2019 to October 1, 2002.  There is
> also no dispute that in the 12 years following
> the modified maturity date, no one filed a
> continuation statement.  Therefore, on October
> 1, 2014, Williams became entitled to a
> presumption that the Deed of Trust has been
> paid off.

(ECF No. 82, at 6-7).  Plaintiff's argument rests on the mistaken

belief that the loan modification agreement somehow had the effect

of modifying *the Deed's* maturity date.  This unsupported belief is

plainly wrong.  The loan modification agreement did *not* modify the

Deed of Trust.  The Note and Deed of Trust are separate, enforceable contracts.  The loan modification agreement modified the Note only.  In fact, section seven of the Loan modification agreement, titled *Renewal and Extension of Maturity*, expressly stated that:

> It is the intention of the parties that all liens and security interests described in the Security Instrument are hereby renewed and extended until the Indebtedness evidenced by the Note, as renewed, modified, and extended hereby, has been fully paid.  Lender and Borrower acknowledge and agree that such extension, renewal, amendment, modification, or rearrangement shall in no manner affect or impair the Note or the liens and security interests securing the same, the purpose of this Agreement being simply to extend, modify, amend, or rearrange the time and manner of payment of the Note[.]

(ECF No. 85-3, at 16).  The loan modification agreement itself makes clear that the Deed of Trust was not modified by the agreement.  The only maturity date in the recorded instrument is June 1, 2019, and 12 years have not elapsed.  Accordingly, the court will issue a declaration that Md. Real Property Code Ann. § 7-106(c)(1) does not preclude enforcement.

Plaintiff's next request is for a declaration that "the statute of limitations bars [Anthium from bringing] any suit for recovery of damages under the terms of the Note[.]" (ECF No. 58, at 2, 7-13).  The parties talk past each other in their arguments as to whether a three, six, or twelve-year statute of limitations

applies and whether payments made by Plaintiff as recently as August 2014 and May 2017 had the effect of extending the statute of limitations.  Critically, however, neither party alleges that Anthium has actually filed any suit for damages and therefore, Plaintiff's request is speculative.  Myriad circumstances could affect the running of the statute of limitations, and it is premature to consider the merits of an affirmative defense that may never arise.  The asserted controversy lacks sufficient immediacy and reality to warrant the issuance of a declaration.  "A district court should issue a declaration when it will help in 'clarifying and settling' legal relationships and will 'terminate and afford relief from the uncertainty, insecurity, and controversy' driving the suit.  *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 423 (4th Cir. 1998) (quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937))."  *Reyazuddin v. Montgomery Cty., Maryland*, 754 F. App'x 186, 192–93 (4th Cir. 2018).  Because no suit has been filed to date and because such suit may never be filed, there is no actual controversy for the court to resolve.  28 U.S.C. § 2201.  Accordingly, the court declines to issue a declaration on whether the statute of limitations has run.[4]

---

[4] Even if Anthium *had* instituted an action for damages against Plaintiff, however, it seems that the loan modification agreement signed by Plaintiff contains a clear waiver of Plaintiff's statute of limitations defense.  Section seven of the agreement reads:

Anthium's counterclaim and third-party claim request a declaration regarding the exact amount still owed under the Note. The parties agree that the Note matured on October 1, 2002 and that some amount of interest continued accruing after this date because Plaintiff had not made required balloon payment.   The parties dispute, however, the appliable interest rate for the period after October 1, 2002.   Anthium asserts that the fixed, ten percent interest rate actually charged from October 2002 onward was proper.   Plaintiff, on the other hand, contends that after October 1, 2002, the interest rate should have reverted to the adjustable rate contained in the original Note.   Thus, Plaintiff contends that he has been overpaying on interest for years and that the amount due is significantly higher than it should be. (*See* ECF No. 82, at 15 n.2) ("Between November 2008 and March 2017, the index for the adjustable interest rate [] was always below 1.00 percent.   Therefore, the interest rate would have been calculated to be no higher than 3.875 percent as compared to the 10.00 percent actually charged by the note holders.").   Thus, Plaintiff and Anthium seek competing declarations regarding the proper amount due under the Note.   (*See* ECF No. 82, at 15) ("If

---

"The Borrower hereby expressly waives the benefit of any and all statute of limitation which might otherwise inure the Borrower's benefit, or be in any way applicable to Borrower's obligations under the terms of any and all instruments described herein." (ECF No. 85-3, at 16).   Plaintiff fails to respond to this argument.

Anthium is permitted to sue Williams for amounts due under the terms of the note, the rate of interest will be critical in determining the amount actually owed."). (*See also* ECF No. 58, at 7-8) ("There exists a justiciable controversy as to . . . the outstanding amount owed under the Note . . . Anthium is entitled to a declaration that the Note [is] valid and enforceable.). The interest rate provision contained in the original Note provided that:

> 2. Interest
>
> Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 8.875%. The interest rate I will pay may change in accordance with Sections 4 or 5 of this Note.
>
> *The interest rate required by this Section 2 and Sections 4 or 5 of this Note is the rate I will pay both before and after any default[.]*
>
> 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES
>
> (A) Change Dates
>
> The adjustable interest rate I will pay may change on the first day of December 1989 and on that day every 6th month thereafter.
>
> (B) The Index
>
> Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury Securities

adjusted to a constant maturity of 1 year, as
made available by the Federal Reserve Board.

(ECF No. 85-1).  The loan modification agreement provided that:

> This Loan modification agreement . . . *amends
> and supplements* one certain promissory note
> ("Note") dated May 26, 1989, in the original
> principal amount of Two hundred thirteen
> thousand seven hundred fifty and 00/100th
> dollars ($213,750.00) executed by Lindsley
> Williams.
>
> Interest will be charged on the unpaid New
> Principal Balance until the full amount of
> principal has been paid.  Borrower will pay
> interest at the rate of 1.00% from November
> 01, 1996 to April 01, 1997.  The rate of
> interest will increase to 9.00% from May 01,
> 1997 to October 01,1997.  *The rate will
> increase to 10.00% on November 01, 1997 and
> will remain as such until maturity.*

(ECF No. 85-3, at 15) (emphasis added).  As seen above, the loan
modification agreement was silent on the interest rate to be
charged after maturity if Plaintiff defaulted.  Such agreement
*amended* the Note to the extent that terms were different *and
supplemented* the Note to the extent that any new terms were added.
It did not, however, replace or entirely supersede the Note.
Neither document extinguished the other.  Thus, to the extent the
loan modification agreement was silent on any terms that appeared
in the original Note, the terms of the original Note remained in
effect and govern.  The original Note unambiguously states that
"The interest rate required by this Section 2 and Sections 4 or 5
of this Note is the rate I will pay both before *and after any
default*[.]"  The loan modification agreement had the impact of

substituting this sentence to read: "The interest rate required by the loan modification agreement is the rate I will pay both before and after any default[.]"  Thus, the fixed ten percent interest rate contained in the loan modification agreement continued to apply from October 1, 2002 until the Note was fully paid off. Thus, Defendants were not overcharging, and Plaintiff was not overpaying on interest.  The court will issue a declaration to this effect.[5]

**B.   Count II: Unjust Enrichment against Bayview**

Plaintiff argues in Count II that Bayview was unjustly enriched because it was not "legally entitled to receive" the $112,581 lump-sum payment that he made to prevent foreclosure because the "amount that Bayview stated [Plaintiff] was required to pay was incorrect because Bayview based it on the Franklin Loan History and interest of ten percent, which were not accurate." (ECF No. 13, at 8).  Plaintiff's unjust enrichment claim rests on his belief that Bayview incorrectly calculated the interest rate owed on the loan.  As already explained, this belief is mistaken, and Defendants were correct in their calculation of the interest rate and the outstanding amount of principal owed.  In any event,

---

[5] Anthium's alternative request for a judicial declaration that Anthium has an equitable lien and constructive trust in value equivalent to the lien because Plaintiff and Ms. Dodd-Major would be unjustly enriched without the continuing vitality of the lien need not be addressed.

a theory of unjust enrichment is not available to Plaintiff under the circumstances.[6] A plaintiff may recover under an unjust enrichment theory by establishing: 1) a benefit conferred upon the defendant by the plaintiff; 2) knowledge by the defendant of the benefit; and 3) the acceptance by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value. *Hill v. Cross Country Settlements, LLC*, 402 Md. 281, 295 (2007). However, a plaintiff cannot recover under the theory of unjust enrichment "when an express contract is present" covering the same subject matter absent one of the rare exceptions. *See Janusz v. Gilliam,* 404 Md. 524, 537, 947 A.2d 560 (2008) ("In Maryland, a claim of unjust enrichment, which is a quasi-contract claim, may not be brought where the subject matter of the claim is covered by an express contract between the parties . . . [except] when there is evidence of fraud or bad faith, there has been a breach of contract or a mutual rescission of the contract, when rescission is warranted, or when the express contract does not fully address a subject matter."). *See also FLF, Inc. v. World Publ'ns, Inc.,* 999 F.Supp. 640, 642 (D.Md. 1998)

---

[6] In the alternative, Defendants argue that the unjust enrichment claim fails because Plaintiff sued the wrong party (the loan servicer instead of the loan creditor) and because the monies paid were actually owed. (ECF No. 85, at 48-50). The court need not reach such arguments because the existence of express contracts governing the loan payments dooms Plaintiff's claim.

("It is settled law in Maryland, and elsewhere, that a claim for unjust enrichment may not be brought where the subject matter of the claim is covered by an express contract between the parties."). Plaintiff's unjust enrichment claims fails because the Note, Deed of Trust, and Loan modification agreement expressly defined the parties' obligations on this subject.   The existence of such express contracts bars any unjust enrichment claim as a matter of law.   Accordingly, Bayview is entitled to summary judgment on Plaintiff's Count II.

> **C.   Count III: Negligent Misrepresentation against Bayview**

Plaintiff concedes that his negligent misrepresentation claim against Bayview in Count III fails.   (*See* ECF No. 87, at 17) ("Williams acknowledges that at this point in the proceedings, he cannot prevail on his claim that Bayview negligently misrepresented the amount owed under the terms of the note to Williams.   Without waiving any right to recover from any over payment that benefited any other party, William concedes his summary judgment claim against Bayview.").   Accordingly, the court will enter summary judgment in favor of Bayview on Plaintiff's Count III.

> **D.   Count IV: Violation of FDCPA against Selene and Atlantica**

Plaintiff also concedes that his claim in Count IV, that Selene and Atlantica violated the FDCPA, is not viable because

neither entity is subject to the FDCPA.  (ECF No. 87, at 17). Thus, the court will also enter summary judgment in favor of Selene and Atlantica on Count IV.

**E.   Count V: Violation of MCDCA against Bayview, Selene, and Atlantica**

In Count V, Plaintiff asserts that Bayview, Selene and Atlantica violated § 14-202(8)[7] of the MCDCA by demanding from him payments that he did not owe.  (*See* ECF No. 13, at 12).  Section 14-202(8) of the MCDCA provides that "[i]n collecting or attempting to collect an alleged debt a collector may not" "[c]laim, attempt, or threaten to enforce a right with knowledge that the right does not exist[.]"

Defendants argue the MCDCA is not applicable in this case because the statute "is meant to proscribe certain methods of debt collection and is not a mechanism for attacking the validity of the debt itself."  (ECF No. 85, at 58).  In other words, because Plaintiff merely disputes the precise amount owed and not that a debt exists at all, Defendants contend that no claim is justified under the MCDCA.  (*See Alston v. Eberwein Grp. LLC*, Civil Action No. TDC-17-3278, 2019 at *5) ("[W]hile an 'unauthorized type of charge' can support an action under section 14-202(8), 'typographical or mathematical errors' in the debt calculation

---

[7] It was not until he filed his reply brief that Plaintiff clarified the specific section of the MCDCA that he believed Defendants violated.

will not.").  In belated attempt to save his claim, Plaintiff shifts course and argues in his reply that "in this instance, [he] is asserting that the debt is not legitimate and undisputed." (ECF No. 87, at 18).  Defendants correctly assert that this amounts to an improper attempt by Plaintiff to amend his complaint.  Nowhere in Plaintiff's first amended complaint did he allege that he owed *no* debt.  Rather, the first amended complaint expressly stated that "[t]he amount *actually owed* to Bayview as of May 15, 2017 was substantially *less than* $112,554.81 . . . the amount demanded by Bayview to stop the foreclosure *exceeded the actual amount due* by more than $100,000.00."  (ECF No. 13, at 5) (emphasis added). Plaintiff may not amend his already amended complaint at this late stage in the process.  Fed.R.Civ.P. 15(a)(1).

Moreover, as previously discussed, Defendants have demonstrated that a debt does, in fact, remain owed under the Note. Thus, Plaintiff cannot substantiate his MCDCA claims. Accordingly, Bayview, Selene, and Atlantica are entitled to summary judgment on Plaintiff's Count V.[8]

### F.   Count VI: Violation of the MCPA Against Bayview, Selene, and Atlantica

Plaintiff alleges in Count VI that Bayview, Selene, and Atlantica "deceived" him in violation of the MCPA by demanding

---

[8] Likewise, any claim against Bayview, Selene, or Atlantica for violation of the MCDCA premised on an alleged violation of the FDCPA also necessarily fails because, as discussed above,

from him payments that he did not owe. (ECF No. 13, at 13). He further alleges that "[a]s a result of Bayview's actions, [he actually did pay] amounts to Bayview that he did not owe, incurred expenses in order to make the payment on an expedited basis, lost interest income on the amount paid, and suffered emotional distress and mental anguish." (*Id.*). To establish a claim under the MCPA, a plaintiff must allege "(1) an unfair or deceptive practice or misrepresentation that (2) is relied upon, and (3) causes them actual injury." *Stewart v. Bierman*, 859 F. Supp. 2d. 754, 768 (D.Md. 2012)). Because Defendants have established that the amounts demanded were, in fact, accurate – such demands were not unfair or deceptive, and no violation of the MCPA can be established. Accordingly, Bayview, Selene, and Atlantica are entitled to summary judgment on Count VI.

## V.   Conclusion

For the foregoing reasons, the court will enter appropriate declarations and otherwise grant Defendants' cross-motion for summary judgment. A separate order will follow.

/s/
_____
DEBORAH K. CHASANOW
United States District Judge

---

Plaintiff concedes that his FDCPA claims against Selene and Atlantica fail and because Plaintiff does not allege any violation of the FDCPA by Bayview.